GUIDRY, J.,
dissents and assigns reasons. '
|,I disagree with the majority’s conclusion that La.Rev.Stat. § 22:658(A)(3) does not require.a showing of bad faith prior to the imposition of penalties for failure to initiate loss adjustment in a timely manner. I would, therefore, affirm the lower court’s ruling that the plaintiff is required to prove the insurer was arbitrary, capricious, or without probable cause before penalties may be assessed against the insurer under § 22:658(A)(3). Oubre v. Louisiana Citizens Fair Plan, 09-620 (La.App. 5 Cir. 11/9/10), 53 So.3d 492. I agree with the lower court that “a reasonable interpretation of [La.Rev.Stat. § 22:658(A)(3) and La.Rev.Stat. § 22:1220] indicates that in order to subject an insurer to penalties for failing to initiate loss adjustment in a timely manner, the insurer must be found to have breached the duty of good faith.” Oubre, 09-620 at p. 22, 53 So.3d at 505.
Furthermore, although the majority opinion affirmed the lower court’s holding that the statute provides for a maximum *1008 amount of $5,000.00 when no damages are proven, I disagree with the opinion to the extent that language therein affirming the district court’s imposition of this amount suggests that the penalty to be imposed for any failure to initiate loss adjustment timely will necessarily result in a fine of $5,000.00. As the lower court found, the imposition of this penalty is discretionary, |2and even then it may be imposed only up to an amount of $5,000.00 if damages are not proven. Thus, in my view, the district court here was required to make a factual determination as to an appropriate penalty in each case, but the district court made no such determination. Thus, I agree with the lower court that summary judgment was not warranted under these circumstances.
Finally, I disagree with the majority’s holding that the advancement of the ALEs did not constitute sufficient compliance with the requirement to initiate loss adjustment. The majority focuses on the letter sent by Citizens to its policy holders, rather than the actions of Citizens in attempting to adjust the claims against it. The majority effectively holds that initiation of loss adjustment must either be the setting of an appointment, the physical inspection of the property, or an “evaluation” of the claim. I disagree that initiation of loss adjustment is so narrowly defined. I believe the insurer here undertook reasonable steps to initiate loss adjustment and to resolve the claims against it under the circumstances of this catastrophic loss situation. Accordingly, I would find, under the facts as summarized by the majority, that there was no breach of the statutory requirement to initiate loss adjustment in a timely manner.